## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

DEBBIE TONITA PURIFOY,                    :

     Petitioner,                         :

vs.                                       :        CA 16-0538-CG-MU

JEFFERSON S. DUNN, Commissioner  :
of the Alabama Department of
Corrections,                              :

     Respondent.                         

## <u>REPORT AND RECOMMENDATION</u>

Debbie Tonita Purifoy, a state prisoner presently in the custody of the Alabama Department of Corrections, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner is challenging the validity of her September 24, 2014 cocaine trafficking conviction in the Circuit Court of Escambia County, Alabama, where she was sentenced to life imprisonment, pursuant to Alabama's Habitual Felony Offender Statute, on November 5, 2014. The Alabama Court of Criminal Appeals affirmed Purifoy's conviction and sentence by unpublished memorandum opinion issued on August 7, 2015. Her application for rehearing was overruled on August 28, 2015, and her petition for writ of certiorari was denied by the Alabama Supreme Court, without opinion, on October 23, 2015. Purifoy then sought review in the United States Supreme Court; however, her petition for writ of certiorari to the Alabama Court of Criminal Appeals was denied on March 21, 2016. *Purifoy v. Alabama,* ____ U.S. ____, 136 S.Ct. 1468, 194 L.Ed.2d 554 (2016).

Purifoy filed the instant federal habeas corpus petition in this Court on October 23, 2016 (Doc. 1), and therein set forth the following grounds which she claims entitle her to federal habeas corpus relief: (1) the trial court committed reversible error in admitting into evidence under Rule 404(b) a prior conviction for possession of cocaine and marijuana; and (2) "[i]t cannot be concluded the introduction of the evidence of [her] prior conviction for possession of cocaine and marijuana[] was harmless beyond a reasonable doubt. The admission of the conviction was overly prejudicial, its impact substantially outweighed any probative value, the admission of the evidence constituted reversible error, and[,] accordingly, [her] conviction is due to be reversed." (*Id.* at 4.)

This cause is before the Court on the petition (Doc. 1; *see also* Doc. 2 (evidentiary materials)), respondent's answer with attachments (*see* Doc. 6), and petitioner's response to the answer (Doc. 8).[1] After careful review, the Court has determined that the record contains sufficient facts upon which the issues under consideration may be properly resolved. Therefore, no evidentiary hearing is required. *Compare Means v. Secretary, Dep't of Corrections,* 433 Fed.Appx. 852, 855 (11th Cir. July 12, 2011) ("[W]here 'the record refutes [a petitioner's] factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.'") (citation omitted)), *cert. denied,* ___ U.S. ___, 132 S.Ct. 1580, 182 L.Ed.2d 198 (2012) and *Allen v. Secretary, Florida Dep't of Corrections,* 611 F.3d 740, 745 (11th

---

[1]       In her response to the answer, Petitioner appears to have "modified" her writ to correctly claim that the erroneous admission of her prior cocaine and marijuana possession conviction had a substantial and injurious effect or influence in determining the jury's verdict and, therefore, she is entitled to habeas corpus relief in the form of a reversal of her cocaine trafficking conviction. (*See* Doc. 8, at 21 & 24-25.)

Cir. 2010) ("A district court is not required to hold an evidentiary hearing if the claims 'are merely conclusory allegations unsupported by specifics,' . . . or 'if the record refutes the applicant's factual allegations or otherwise precludes habeas relief[.]'"), *cert. denied,* U.S. ___, 131 S.Ct. 2898, 179 L.Ed.2d 1192 (2011) *with* 28 U.S.C. § 2254(e)(2) ("If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—(A) the claim relies on—(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")).[2]

## **FACTUAL BACKGROUND**

On September 13, 2012, Alabama State Trooper James Zachary Richburg was patrolling I-65 and traveling southbound near Conecuh County, Alabama, at approximately 8:00 p.m.,[3] when he saw a silver car coming up behind him traveling in excess of the speed limit. (Doc. 6, Exhibit 1, T.T. 49 & 50-51.) Richburg activated his rear radar system and clocked the silver car, at its fastest, traveling in excess of 100

---

[2]    Petitioner nowhere makes the showing required by 28 U.S.C. § 2254(e)(2) (*compare* Doc. 1 *with* Doc. 8) and cannot make that showing because the factual basis of the claim was fully developed in the State court proceedings; therefore, "no federal evidentiary hearing is permitted[.]" *Copeland v. Brown,* 2014 WL 11209842, *3 (N.D. Ga. Nov. 26, 2014), *report & recommendation adopted,* 2016 WL 1337313 (N.D. Ga. Mar. 31, 2016).

[3]    There is no question but that it was dark at 8:00 p.m. on September 13, 2012. (*See, e.g.,* T.T. 136.)

miles per hour. (T.T. 50-51.) However, Richburg was unable to "get the vehicle in the target window[]" (*id.* at 51) and, therefore, he radioed Trooper Law that "there was a silver car coming 80 southbound." (*Id.*)[4]

Alabama State Trooper Rodney Law testified that when he received the radio transmission from Richburg he pulled his car off the highway onto the emergency lane facing southbound near mile marker 71. (T.T. 107 & 109-10.)  Law activated his rear radar and clocked Purifoy's speed at 90 (*id.* at 110-13; *see also id.* at 109 (Law's identification of Purifoy)); the trooper then activated his lights and entered the interstate (*see id.* at 114), between Purifoy's car and the other speeding vehicle (*id.*). Law observed Purifoy's vehicle—which was already in the inside "fast" lane—make an erratic move toward the median and saw an object came out of the driver's side of the vehicle and land in what he refers to as the "rumble strip," a "strip of pavement just to the left before the grass and it has some grooves cut out." (*Id.*) Law saw the object land in the grooved "cutouts."[5] (*Id.* at 114; *see also id.* at 145 & 146 ("The vehicle that I had pulled over, I saw the item come out [of that vehicle]. I saw it tumble. I saw where it stopped. And when I went back and searched the area, there was just only that item in that spot. There was no other debris other than that item. . . . I know where it landed. And I saw it land. And all I had to do was go back to the spot and see what the object

---

[4]     Richburg exited the interstate, at Exit 77, and then immediately returned to the interstate to try "to catch the vehicle in [his] front Same Lane radar[;]" however, he could not catch the car because of traffic and the time it took him to exit and reenter the interstate. (*Id.* at 51-52.) The witness later admitted, on re-cross-examination, that he may have radioed Trooper Law that several cars were moving at excess speed. (T.T. 65.)

[5]     Law admitted on cross-examination that he did not identify in his report that he saw the object roll. (T.T. 147.)

was that was there. . . . When the item came out it rolled, and I noticed it rolled and it stopped right inside one of those little gro[o]ve-outs. And that is where the item was when I returned. It was not in the grass, it was in the little gro[o]ve-out."); 151 & 152 ("[T]he object that I retrieved, it weren't there [before] because I know what it looked like when it landed. I just didn't know what it was. . . . I told you, when the object landed, I saw the object, I made a mental note of what it looked like. And when I went back, I looked for an object that fit in that description."); 156 & 157 ("It was not there. It came out of the driver's side window of that car[.] . . . [I know it was not already out there b]ecause I saw it when it came out and I saw it tumbling and rolling. And it came to a stop."); 160 ("The area that I was looking for was specifically in those rumble strip cutouts. I did not look in the grass. That's not where I saw the item[] stop[]. I saw it in the rumble strips and I looked in that area. I looked in front of it, of course. I was backing back to it. And I looked behind it. And that was the area that I located it at, that I saw it."); 172 & 173 (Law's testimony that the object came out of the silver Dodge Avenger that Purifoy was driving and that he found it in the area he had identified by observation as the area where the object came out—the rumble strip area on the median side of the highway—and the object consisted of three bags of a powder substance that was later determined to be cocaine); and 182 ("I didn't check a 50-yard radius because when I made a mental note of the location where I was at, I knew where I was at based on the overpass that was there and signage in the area and that's what placed me back to that area.")). Immediately thereafter, the vehicle crossed both lanes and pulled off the highway into the emergency lane on the right. (*Id.* at 114) Law advised Richburg that an object had been thrown from the vehicle and directed him to the area where Law saw it

land. (*See id.* at 115.) Law then engaged Purifoy and asked her what she had thrown

out of the vehicle (*id.*; *see also id.* at 126 & 142 (audiotape of Law telling Richburg or

the dispatcher that an item was thrown out of a Silver Dodge)); Purifoy "stated that she

did not throw anything out." (*Id.* at 115)[6] Approximately 200 yards back from where the

silver car was stopped, Richburg saw what looked like a bag with something white in it

"between the fog line and the edge of the asphalt there on the shoulder, on the inside of

the highway." (T.T. 52.) Law told Richburg he would pick up the object (*id.*); therefore,

Richburg pulled his car behind Law's car and, as Richburg stayed with Purifoy, Law got

into Richburg's car and backed the car up and retrieved the object (*compare id.* at 52-53

*with id.* at 115). The object Law retrieved contained individual bags which, in turn,

contained white powder (*id.* at 115-17 & 120-21; *see also id.* at 53-54),[7] which field

tested positive for the presence of cocaine[8] (*id.* at 102).[9]

---

[6]        Law testified that Purifoy was not truthful at the scene because he saw something come out the driver's side window of the car she was driving and "she said she didn't throw anything out[.]" (T.T. 174.)

[7]        Purifoy was cited, on the scene, for speeding and driving while her driver's license was suspended (*id.* at 127); she was arrested and Mirandized (*id.* at 130).

[8]        To be sure, on cross-examination, both Trooper Richburg and Trooper Law acknowledged that I-65 is a drug corridor (*compare id.* at 56 *with id.* at 165) and that some people may have a tendency to "ditch things" when they see police ahead of them or behind them (*id.*; *compare id. with id.* at 66-67 (Richburg's testimony, in response to defense counsel's hypothetical, that he would not find it unusual for someone in another car traveling in the same direction as the defendant to toss something on the side of the road upon seeing police lights)). In addition, both troopers agreed that they had not "surveyed" the area of the highway from which the cocaine was recovered before Purifoy was stopped to see if there was any of the ever-present highway debris/trash (e.g., beer cans, McDonald's bags, etc.) in that area. (*Compare id.* at 57 & 60 *with id.* at 151.) Richburg admitted that he did not know how long the contraband he saw had been on the side of the road and that it could have been there all day (*id.* at 61); however, the location of the contraband was consistent with the location described to him by Law (*id.* at 62; *see also id.* at 63-64 & 64 ("When I was pulling up behind him, I turned my lights on and hit the shoulder and he said, It's right about in that area right there where you're at now. And (Continued)

6

A forensic scientist with the Alabama Department of Forensic Sciences examined the substance inside the bags. The substance tested positive for cocaine base, a controlled substance. (*See id.* at 77-78 & 87.) The substance inside the bags was also weighed and came to a total weight of approximately 71 grams. (*Id.* at 89.) Alabama Bureau of Investigation Special Agent Anthony Charles Calderaro testified that 70 grams of cocaine would have a street value of approximately $7,000.00. (*Id.* at 102-03.)

Following the testimony of all the State's witnesses, the trial allowed the State, over the strenuous objection of defense counsel, to publish to the jury a certified copy of Purifoy's prior conviction, in January of 2012, of possessing cocaine and marijuana. (*Id.* at 236-38; *compare id. with id.* at 241-42 (introduction into evidence and publication to the jury); *see id.* at 187-235 (argument regarding the issue)).[10] The State then rested

---

that's when I looked to the inside shoulder. And the object, the bags were laying in the median. . . . He [Law] was looking behind him. I was approaching him. I wasn't 200 yards from him, right behind him, when I hit the shoulder.")). For his part, Law admitted, the obvious, that he could not identify the exact nature of the object that came out of the driver's side window of the car Purifoy was driving. (*Id.* at 134 ("At that time it could have been anything.")). He also agreed with defense counsel that after he stopped Purifoy, with blue lights flashing, that the videotape of the stop showed several cars passing in the outside lane (*see, e.g., id.* at 143-144). However, Law was resolute in his testimony that, for instance, the first car to pass on the outside lane did not throw the item containing contraband onto the median because he recovered the item containing contraband from the spot he saw the item stop rolling after he observed it coming out of the driver's side window of the car Purifoy was driving. (*Id.* at 145.)

[9]     The object containing contraband was subsequently placed in an evidence bag by Trooper Law. (*Id.* at 116.)

[10]     At the tail end of the court's instructions to the jury, the following limiting instruction was given with respect to the prior conviction introduced by the State:

>        Now, ladies and gentlemen, in this case there has been an exhibit that has been introduced into evidence. It is known as State's Exhibit No. 11. It is a certified copy of a conviction of the defendant in the Circuit Court for the First Judicial Circuit of Escambia County, Florida. And the conviction is for possession

(Continued)

(*id.* at 242), after which the defendant made motion for judgment of acquittal on the basis that the State failed to prove a prima facie case as to each element of the offense, namely, the State failed to show that she exercised possession, dominion or control, whether actual or constructive, over the cocaine (*id.* at 244-45). The State, in arguing that a prima facie case of trafficking had been established (most especially, dominion, control and knowledge), relied solely on the testimonial evidence offered in its case in chief, not once mentioning the prior cocaine and marijuana possession conviction it introduced at the conclusion of its case. (*Id.* at 246-47.) The defendant's motion was denied (*id.* at 247). After the defense rested (*id.* at 250-51), defense counsel again made motion for judgment of acquittal (*id.* at 253) that was denied by the court (*id.*).

On September 24, 2014, a jury of Purifoy's peers found her guilty of the indicted charge of trafficking cocaine. (*Id.* at 292-94; *see also id.* at 293-94 (polling of the jury)). On November 5, 2014, Purifoy was sentenced to life imprisonment, in accordance with

---

of cocaine, possession of marijuana not greater than 20 grams. That is dated January 31, 2012.

I charge you that this certified copy of the conviction of the defendant for these two stated offense shows prior bad acts of the defendant. But you may not consider these said prior convictions as evidence that the defendant had a bad character or she acted in conformity with that character on the occasion that is the basis of the present charge; nor may you consider this evidence as proof that the defendant committed the acts alleged in this case.

You may only consider the convictions set out in State's Exhibit No. 11 as evidence of a motive, an intent to dispose of the alleged controlled substance, and[/]or knowledge of dominion or control of the alleged controlled substance.

(*Id.* at 281-82.)

Alabama's Habitual Felony Offender Statute. (*Id.* at 312-13; *see also id.* at 308-12.)[11] Purifoy entered oral notice of appeal. (*Id.* at 314.) On appeal, Purifoy raised but one issue, namely, that the trial court "Committed Reversible Error in Admitting Into Evidence under Rule 404(b), a Past Conviction of Appellant for Possession of Cocaine and Marijuana." (Doc. 6, Exhibit 2, at 8.) In affirming Purifoy's conviction and sentence, by unpublished memorandum opinion, the Alabama Court of Criminal Appeals addressed the issue as follows:

> Purifoy does not challenge the sufficiency of the evidence on appeal. Therefore, a brief recitation of the facts is all that is necessary in this case. Rodney Law, a state trooper with the Alabama State Trooper's office, testified that on September 13, 2012, he was informed by a fellow state trooper that several vehicles were traveling above the speed limit and headed in his direction. Law pulled over in the emergency lane and waited for the vehicles to approach. One of the vehicles, driven by Purifoy, was measured traveling 90 miles per hour and Law initiated a traffic stop on it. As Law pulled the vehicle over, he saw the car swerve and objects come out of the driver's side of the car and land on the rumble strip on the left side of the interstate. After pulling Purifoy over, Law approached Purifoy's vehicle and asked what she threw out of the vehicle; Purifoy denied throwing anything. After another state trooper arrived at the scene, Law returned to the location of the tossed items, around "200 yards back" from Purifoy's car, and collected several small bags of what appeared to be cocaine.

> Purifoy was arrested and the bags were sent to the Alabama Department of Forensic Sciences for analysis. The white material in the bags was tested and determined to be cocaine base weighing 71 grams total.

> Before the State rested, it informed the circuit court that it intended to introduce several of Purifoy's Florida felony drug convictions under Rule

---

[11]    Trafficking in cocaine is a Class A felony for purposes of Alabama's Habitual Felony Offender Statute, Ala. Code § 13A-5-9. *See* Ala. Code § 13A-12-231(13). Given Purifoy's two prior felony drug convictions out of Florida (*see* Doc. 6, Exhibit 1, T.T. 302-03 & 306-08), sentencing with respect to the defendant's Class A felony conviction of trafficking in cocaine was limited to "life or [] any term of not less than 99 years." Ala. Code § 13A-5-9(b)(3).

404(b), Ala.R.Evid., in order to show that Purifoy had "knowledge and control" over the cocaine in this case. After a lengthy discussion with the attorneys and over Purifoy's objection, the circuit court ruled that the State could introduce the evidence for the purpose of showing "motive and intent to dispose of the evidence and knowledge, dominion, and control of the alleged illegal substance." The State then offered a certified copy of a 2012 Florida conviction in which Purifoy pleaded guilty to marijuana possession of not more than 20 grams and possession of cocaine.

Later, the circuit court charged the jury and stated,

"I charge you that this certified copy of the conviction of the defendant for these two stated offenses shows prior bad acts of the defendant. But you may not consider these said prior convictions as evidence that the defendant had a bad character or she acted in conformity with that character on the occasion that is the basis of the present charge; nor may you consider this evidence as proof that the defendant committed the acts alleged in this case.

After both sides rested and [the] circuit court instructed the jury on the applicable principles of law, the jury found Purifoy guilty of trafficking cocaine. This appeal followed.

Purifoy's sole contention on appeal is that the circuit court erred when it allowed evidence in violation of Rule 404(b). Specifically, Purifoy argues that the circuit court committed reversible error when it allowed the State to present evidence of her prior convictions for possession of cocaine and marijuana.

"The admission or exclusion of evidence is a matter within the sound discretion of the trial court." Taylor v. State, 808 So.2d 1148, 1191 (Ala.Crim.App. 2000), aff'd, 808 So.2d 1215 (Ala. 2001). "The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court's determination on that question will not be reversed except upon a clear showing of abuse of discretion." Ex parte Loggins, 771 So.2d 1093, 1103 (Ala. 2000). This is equally true with regard to the admission of collateral-act evidence. See Davis v. State, 740 So.2d 1115, 1130 (Ala.Crim.App. 1998); see also Irvin v. State, 940 So.2d 331, 344-46 (Ala.Crim.App. 2005). In a discussion of collateral-act evidence, this Court stated: "If the defendant's commission of another crime or misdeed is an element of guilt, or tends to prove his guilt otherwise than by showing of bad character, then proof of such other act is admissible." Saffold v. State, 494 So.2d 165 (Ala.Crim.App. 1986).

10

Rule 404(b), Ala.R.Crim.P., provides:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

"A trial judge should exclude evidence falling within one of the exceptions only if the probative value is substantially outweighed by the danger of unfair prejudice." See Ex parte Register, 680 So.2d 225 (Ala. 1994).

In the instant case, the circuit court exceeded its discretion when it admitted irrelevant prior bad-act evidence of Purifoy's convictions for possession of marijuana and cocaine. There is no logical connection between these convictions and the present charges. Purifoy's defense at trial was that she never threw anything out of the vehicle. Although the prosecutor argued that the prior convictions evidenced Purifoy's motive and intent to exercise dominion and control over the cocaine, it is clear to this Court that these convictions only served to show that Purifoy acted in conformity with those bad acts.

Although the circuit court erred in admitting evidence of Purifoy's previous convictions for possession of marijuana and cocaine into evidence, we must now determine whether the admission of these convictions constituted harmless error. The harmless-error rule provides, in pertinent part:

> "No judgment may be reversed or set aside . . . on the ground of . . . improper admission or rejection of . . . . unless in the opinion of the court to which the appeal is taken or application is made, after examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."

Rule, 45, Ala.R.App.P.

In Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the United States Supreme Court held that before the violation of certain constitutional rights can be held to be harmless, the appellate court must be able to declare a belief that it was harmless beyond a reasonable doubt. In Ex parte Crymes, 630 So.2d 125 (Ala. 1993), the Alabama Supreme Court explained:

11

> "In determining whether the admission of improper testimony is reversible error, this Court has stated that the reviewing court must determine whether the 'improper admission of the evidence . . . might have adversely affected the defendant's right to a fair trial,' and before the reviewing court can affirm a judgment based upon the 'harmless error' rule, that court must find conclusively that the trial court's error did not affect the outcome of the trial or otherwise prejudice a substantial right of the defendant."

630 So.2d at 126. See also Ex parte Greathouse, 624 So.2d 208, 210 (Ala. 1993) (holding that the proper harmless-error inquiry asks, absent the improperly introduced evidence, "is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty").

Although the admission of Purifoy's prior convictions was improper, our review of the record establishes that it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict regardless of the admission of those convictions. Law testified that he saw Purifoy throw items out of her car as he pulled her over for speeding. Law later returned to the location of the items and discovered three bags filled with a white powder. The powder was later tested and determined to be cocaine base weighing 71 grams total. Thus, under the circumstances in this case, we find that any error in the admission of Purifoy's previous convictions was harmless beyond a reasonable doubt. Accordingly, Purifoy is entitled to no relief on this issue.

Based on the foregoing, the judgment of the circuit court is affirmed.

(Doc. 6, Exhibit 4, at 2-6 (internal record citations omitted)). Purifoy's application for rehearing (Doc. 6, Exhibit 5)[12] was overruled on August 28, 2015 (Doc. 6, Exhibit 6), and her petition for writ of certiorari (Doc. 6, Exhibit 7)[13] was denied by the Alabama Supreme Court, without opinion, on October 23, 2015 (Doc. 6, Exhibit 8). Purifoy then

---

[12]    In the application for rehearing, Purifoy simply submitted that the appellate court's denial of her appeal "contravenes longstanding Alabama Case Law." (Doc. 6, Exhibit 5, at 2.)

[13]    Purifoy again argued that the opinion of the Alabama Court of Criminal Appeals contravened "longstanding Alabama Case Law." (Doc. 6, Exhibit 7, at 3.)

sought review in the United States Supreme Court (Doc. 6, Exhibit 9)[14]; however, her petition for writ of certiorari to the Alabama Court of Criminal Appeals was denied on March 21, 2016. *Purifoy v. Alabama,* ____ U.S. ___, 136 S.Ct. 1468, 194 L.Ed.2d 554 (2016).

As previously indicated, Purifoy filed her petition seeking habeas corpus relief in this Court on October 23, 2016 (Doc. 1), raising the following grounds which she claims entitle her to federal habeas corpus relief: (1) the trial court committed reversible error in admitting into evidence, under Rule 404(b), a past conviction for possession of cocaine and marijuana; and (2) "[i]t cannot be concluded the introduction of the evidence of [her] prior conviction for possession of cocaine and marijuana[] was harmless beyond a reasonable doubt. The admission of the conviction was overly prejudicial, its impact substantially outweighed any probative value, the admission of the evidence constituted reversible error, and[,] accordingly, [her] conviction is due to be reversed." (*Id.* at 4.)[15]

---

[14]     Purifoy advised the United States Supreme Court that the following question was presented for review: "WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ADMITTING INTO EVIDENCE UNDER RULE 404(b), A PAST CONVICTION OF PETITIONER FOR POSSESSION OF COCAINE AND MARIJUANA?" (Doc. 6, Exhibit 9, at 3.) In addition, for the first time in any of her written pleadings, Purifoy identified the following constitutional rights she claimed to be implicated by her presented issue: "Fifth Amendment Right Against Self Incrimination and Denial of Due Process, and Sixth Amendment Confrontation Rights and Denial of a Fair and Impartial Trial." (*Id.* at 8.) Other than identifying the foregoing constitutional rights in a conclusory manner on this page and under the heading "REASONS FOR GRANTING THE WRIT" (*id.* at 38), the petition for writ of certiorari contains no citation to any case law directly linking her issue presented to the Fifth, Sixth, and possibly Fourteenth Amendment rights identified by her in the petition for writ of certiorari.

[15]     In her brief in response to the answer, Purifoy has "modified" her claim in conformity with *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), contending that the erroneous admission of her prior drug possession conviction during her trial had a substantial and injurious effect or influence on the jury's verdict. (*See* Doc. 8, at 21 & 24-25.)

Purifoy asserts that she is "being held in prison in violation of her Constitutional Rights[.]" (*Id.* at 3.) However, she nowhere identifies those specific constitutional rights in her habeas corpus petition (*see* Doc. 1) or in her response to the answer (*see* Doc. 8, at 20-26).[16]

## CONCLUSIONS OF LAW

### A.    Merits Review.

---

[16]    Given the foregoing, and because Purifoy did not explicitly argue anywhere on direct appeal to any Alabama state court that the trial court's evidentiary ruling deprived her of due process under the United States Constitution nor does she assert a constitutional error in her federal habeas corpus petition, the undersigned is a bit circumspect about whether petitioner has raised a constitutional error entitling her to federal habeas corpus relief. *Compare* 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws or treaties of the United States*." (emphasis supplied)); *Brecht v. Abrahamson,* 507 U.S. 619, 622-23, 113 S.Ct. 1710, 1713-14, 123 L.Ed.2d 353 (1993) ("In this case we must decide whether the *Chapman* harmless-error standard applies in determining whether the prosecution's use for impeachment purposes of petitioner's post-*Miranda* silence, *in violation of due process* under *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), entitles petitioner to habeas corpus relief." (some emphasis supplied)) and *Mansfield v. Secretary, Dep't of Corrections,* 679 F.3d 1301, 1303 (11th Cir. 2012) ("[T]he State of Florida appeals the district court's order granting habeas relief to petitioner Scott Mansfield on his claim that the admission at trial of a videotape of his custodial interrogation by law enforcement officers, *when he never received any Miranda warnings,* yielded prejudicial *constitutional error.*" (emphasis supplied)), *cert. denied,* ___ U.S. ___, 133 S.Ct. 861, 184 L.Ed.2d 675 (2013), *with Tidwell v. Butler,* 415 Fed.Appx. 979, 980 (11th Cir. Feb. 25, 2011) ("The district court did not err in finding the claim was not cognizable on federal habeas review because the admission of evidence concerning Tidwell's prior bad acts was a question of state law that did not call into question the fundamental fairness of Tidwell's trial."), *cert. denied,* 565 U.S. 965, 132 S.Ct. 459, 181 L.Ed.2d 459 (2011), and *Nelson v. Secretary, Florida Dep't of Corrections,* 2014 WL 4101638, *13 (M.D. Fla. Aug. 20, 2014) (questioning whether petitioner had raised a claim of constitutional error entitling him to habeas corpus relief, where petitioner did not demonstrate that "the admission of the DNA expert's testimony resulted in a violation of due process or some other constitutional right."), *aff'd,* ___ Fed.Appx. ___, 2016 WL 7336574 (11th Cir. Dec. 19, 2016). Nevertheless, given the Alabama Court of Criminal Appeals' direct application of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) and implicit suggestion that the erroneous admission of Purifoy's prior conviction for possessing cocaine and marijuana violated an unidentified constitutional right (but, presumably, her right to due process) held by Purify (Doc. 6, Exhibit 4, at 4-5), the undersigned conducts a merits review of petitioner's prior bad acts claim.

In accordance with the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner is entitled to habeas corpus relief "on any claim adjudicated on the merits in state court if that adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,]" *Cox v. McNeil,* 638 F.3d 1356, 1360 (11th Cir.) (citing 28 U.S.C. § 2254(d)(1)), *cert. denied sub nom. Cox v. Tucker,* 565 U.S. 906, 132 S.Ct. 309, 181 L.Ed.2d 189 (2011), or "'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Mansfield, supra,* 679 F.3d at 1306, quoting 28 U.S.C. § 2254(d)(2); *see also Jones v. Secretary, Dep't of Corrections,* 644 F.3d 1206, 1209 (11th Cir.) ("[U]nder AEDPA, a federal court may not grant habeas relief on a claim that has been considered and rejected by a state court unless it is shown that the state court's decision was 'contrary to' federal law then clearly established in the holdings of the United States Supreme Court, 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); or that it 'involved an unreasonable application' of such law, § 2254(d)(1); or that it was 'based on an unreasonable determination of the facts' in the light of the record before the court, § 2254(d)(2)."[17]), *cert. denied sub nom. Jones v. Tucker,* 565 U.S. 1041, 132 S.Ct. 590, 181 L.Ed.2d 433 (2011).

---

[17]        As amended,  § 2254 now provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(Continued)

"A state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Court's." *Windom v. Sec'y, Dep't of Corr.,* 578 F.3d 1227, 1247 (11th Cir. 2009) . . . . A state court decision involves an unreasonable application of federal law when "it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case. An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putnam v. Head,* 268 F.3d 1223, 1241 (11th Cir. 2001) . . . . The statutory phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

*Spencer v. Secretary, Dep't of Corrections,* 609 F.3d 1170, 1177-1178 (11th Cir. 2010), *cert. denied,* 562 U.S. 1203, 131 S.Ct. 1049, 178 L.Ed.2d 869 (2011); *see also Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000) ("Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law or if the state court decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing

--------

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) & (2).

legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.").

As to findings of fact reviewed under 28 U.S.C. § 2254(d)(2), a federal court determines whether the state court's finding "'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Callahan v. Campbell,* 427 F.3d 897, 926 (11th Cir. 2005) (quoting § 2254(d)(2)), *cert. denied sub nom. Callahan v. Allen,* 549 U.S. 952, 127 S.Ct. 427, 166 L.Ed.2d 269 (2006). "Not only must the factual determination have been unreasonable, but the state court's factual finding must be shown unreasonable by clear and convincing evidence." *Id.*, citing § 2254(e)(1); *see also Miller-El v. Cockrell,* 537 U.S. 322, 339, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)[.]").

> When evaluating whether a state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under § 2254(d)(2), "[w]e may not characterize . . . state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain,* 576 U.S. ___, ___, 135 S.Ct. 2269, 2277, 192 L.Ed.2d 356 (2015). . . . Section 2254(d)(2), like § 2254(d)(1), requires that federal courts afford state court factual determinations "substantial deference." *Id.* If "[r]easonable minds reviewing the record might disagree about" the state court factfindng in question, "on habeas review that does not suffice to supersede" the state court's factual determination. *Rice v. Collins,* 546 U.S. 333, 341-42, 126 S.Ct. 969, 976, 163 L.Ed.2d 824 (2006). We also presume findings of fact made by state courts are correct,

unless a petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

*Daniel v. Commissioner, Alabama Dep't of Corrections,* 822 F.3d 1248, 1259 (11th Cir. 2016).

Turning to the case at hand, Purifoy does not directly identify whether the Alabama Court of Criminal Appeals' decision was "contrary to" or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States, § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, § 2254(d)(2) (*see* Doc. 8, at 20-26); instead, petitioner simply states her action falls under § 2254(d) (*id.* at 20), cites to *Brecht, supra,* as controlling (*id.* at 21), argues that the Alabama Court of Criminal Appeals failed to "discuss and weigh Trooper Law's testimony" in relation to certain "facts" petitioner has selected from the record (*id.* at 22-23), and then concludes that the erroneous admission of her prior possession of marijuana and cocaine conviction "had a substantial and injurious effect or influence in determining the jury's verdict." (*Id.* at 25; *see also id.* at 23-24.) Based on the contents of petitioner's brief, the Court appreciates Purifoy to be arguing that the decision of the Alabama Court of Criminal Appeals was an "unreasonable application" of the harmless error standard set forth in *Chapman, supra*. (*See* Doc. 8, at 20-26.)

To put petitioner's argument in proper context, the undersigned finds guidance in the Eleventh Circuit's decision in *Mansfield, supra,* 679 F.3d at 1306-08.

> AEDPA "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett,* ____ U.S. ____, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (internal quotation marks omitted). "A state court's determination that the claim lack merit precludes federal habeas relief so

long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter,* ___ U.S. ___, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* . . . The Supreme Court has repeatedly instructed us that an unreasonable application of law requires more than mere error or even clear error. . . . In short, as the Supreme Court recently observed, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S.Ct. at 786.

In *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court held that on *direct* review, a federal constitutional error is harmless only if the reviewing court is "able to declare a belief that it was harmless beyond a reasonable doubt," *id.* at 24, 87 S.Ct. 824. Under AEDPA's unreasonable application prong, 28 U.S.C. § 2254(d)(1), federal habeas relief may only be granted if the state court's application of the *Chapman* harmless error standard on direct review was "objectively unreasonable." *Esparza,* 540 U.S. at 18, 124 S.Ct. 7. For ease of exposition, we refer to this standard as the "AEDPA/*Chapman*" standard. *See Fry v. Pliler,* 551 U.S. 112, 120, 127 S.Ct. 2321, 168 L.Ed.2d 16 (2007).

As a federal habeas court, however, we apply a different harmless error analysis than the one articulated in *Chapman.* On *collateral* review, a federal constitutional error is harmless unless there is "actual prejudice," meaning that the error had a "substantial and injurious effect or influence" on the jury's verdict. *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). . . . Because of the "[s]tates' interest in finality," the states' "sovereignty over criminal matters," and the limitation of habeas relief to those "grievously wronged," the Supreme Court set forth in *Brecht* a standard that is more favorable to and "less onerous" on the state, and thus less favorable to the defendant, than the *Chapman* harmless beyond a reasonable doubt standard. *Brecht,* 507 U.S. at 637, 113 S.Ct. 1710; *accord Fry,* 551 U.S. at 117, 127 S.Ct. 2321. The Supreme Court emphasized in *Brecht* that "collateral review is different from direct review," and, therefore, that "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Brecht,* 507 U.S. at 633-34, 113 S.Ct. 1710.

Thus, we have at our disposal two different standards for evaluating harmless error: the AEDPA/*Chapman* standard and the *Brecht* standard. It is clear that when a state court on direct review has determined that the alleged constitutional error was harmless under *Chapman,* a habeas petition cannot be successful unless it satisfies both AEDPA/*Chapman*

19

and *Brecht*. That is, for a federal court to grant habeas relief, it must be true *both* that the state court's application of the *Chapman* harmless beyond a reasonable doubt standard was objectively unreasonable *and* that the error had a substantial and injurious effect or influence on the verdict. *Fry,* 551 U.S. at 119, 127 S.Ct. 2321 (explaining that a petitioner must continue to satisfy *Brecht* even after the enactment of AEDPA, because AEDPA "sets forth a precondition to the grant of habeas relief . . . not an entitlement to it"). That said, as the Supreme Court recognized in *Fry,* "it certainly makes no sense to require formal application of *both* tests (AEDPA/*Chapman* and *Brecht*) when the latter obviously subsumes the former." 551 U.S. at 120, 127 S.Ct. 2321.

Similarly, a federal court may *deny* habeas relief based solely on a determination that the constitutional error is harmless under the *Brecht* standard. Because the petitioner must satisfy both tests in order to obtain relief, it necessarily follows that relief may be denied on the basis of *Brecht* alone. Indeed, subsequent to the Supreme Court's decision in *Fry,* decisions of this Court have denied habeas relief solely under the *Brecht* standard, without first examining whether the state court's harmless error determination on direct review was objectively unreasonable. *See Vining,* 610 F.3d at 571-74; *Hodges v. Att'y Gen., State of Fla.,* 506 F.3d 1337, 1343 (11th Cir. 2007).

.    .    .

In short, we observe, consistent with the Supreme Court's decision in *Fry,* that a federal habeas court may deny relief based solely on a determination that a federal constitutional error was harmless under the *Brecht* standard.

*Id.* at 1306, 1307, 1307-08 & 1308 (emphasis in original).

With these principles in mind, the undersigned considers whether the purported federal constitutional error in this case—the erroneous admission of Purifoy's prior cocaine and marijuana possession conviction—was harmless under the *Brecht* standard. Initially, the undersigned notes that Purifoy appears to question the probative value of the State's evidence against her, implying that the State only had a questionable case for conviction without the erroneous admission of her prior possession of cocaine and marijuana conviction. In particular, Purifoy claims that when Trooper Law's testimony, as

20

set forth by the Alabama Court of Criminal Appeals, is viewed in relation to "facts" she has highlighted in her petition—namely, Law's testimony that petitioner threw an object from her vehicle as she was traveling on the interstate ( a known drug route) at 90 miles per hour at night and that he saw where the object rolled despite not putting that information in his report; Law's inability to identify exactly what was thrown from the vehicle and his request to Trooper Richburg to come in his direction and see what was thrown from the vehicle; Trooper Richburg's testimony that he traveled approximately seven (7) miles before he observed the object[18] and his admission that he did not know how the object got there; and Law's testimony that no one in the several cars that passed him and Purifoy tossed out the object/cocaine in question (Doc. 8, at 22-23)—it is clear that absent the erroneous admission of her prior drug possession conviction Law's testimony "is not overwhelming to the point it could establish Petitioner's guilt beyond a reasonable doubt." (Doc. 8, at 24.) It appears that petitioner, at bottom, is arguing that Law's testimony was not entirely credible and, therefore, the erroneous admission of her prior drug possession conviction had a substantial and injurious effect or influence on the jury's verdict. (*See id.* at 23-25.)

Before looking more closely at the "facts" petitioner has pointed out, the undersigned notes that, in connection with its harmless error determination, the Alabama Court of Criminal Appeals made factual findings crediting two important pieces of evidence in support of Purifoy's conviction: (1) the eyewitness testimony of Trooper Law,

---

[18]      The undersigned notes that Law "directed" Richburg to the area he had seen the object come out of the car Purifoy was driving and come to rest, about 200 yards from the spot Purifoy pulled off on the emergency lane side of the interstate.

who relayed that he saw Purifoy throw an object out of her car that landed on the rumble strip on the left (median) side of the interstate and that he returned to the location of the tossed object, about "200 yards back" from the location Purifoy's vehicle stopped, and collected three small bags containing what appeared to be cocaine; and (2) the testimony of an employee with the Alabama Department of Forensic Sciences that the white material in the three bags was tested and determined to be cocaine base weighing 71 grams. (*See* Doc. 6, Exhibit 4, at 5; *see also id.* at 2.) Because Purifoy does not question the testimony surrounding the testing/identification of the white powder in the three bags and its weight (i.e., she does not question that there was cocaine in the three bags recovered from the side of the interstate on the night of September 13, 2012), the undersigned focuses solely on the testimony of Trooper Law credited by the Alabama Court of Criminal Appeals.

It is clear that the Alabama Court of Criminal Appeals, in setting forth what it considered to be the material portions of Law's testimony, obviously found Law's eyewitness testimony—that he saw Purifoy throw an object out of her car that landed on the rumble strip on the left (median) side of the interstate and that he returned to the location of the tossed object, about "200 yards back" from where Purifoy's vehicle pulled over and stopped, and collected three small bags containing a white powder that he believed to be cocaine—was credible and due to be credited. In attempting to have this Court question the credibility of Law's testimony, Purifoy cites to purported "facts" that in no manner detract from the testimony of Law that the Alabama Court of Criminal Appeals found compelling and certainly do not rebut the presumption of correctness afforded that

court's factual findings by clear and convincing evidence.[19] Stated somewhat differently, testimony that it was nighttime and Law could not readily identify the exact nature of the object that was thrown out of Purifoy's car but was sure no other car tossed the object after he stopped Purifoy's car for speeding in no manner rebuts the presumption of correctness of the factual findings by the Alabama Court of Criminal Appeals, relative to Law's testimony,[20] by clear and convincing evidence. Accordingly, this Court need accept as correct the factual findings of the Alabama Court of Criminal Appeals because they have not been rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Accepting the state court's findings of fact, the undersigned turns to the pivotal issue of whether the admission of Purifoy's prior drug possession conviction at trial "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht,* 507 U.S. at 637, 113 S.Ct. at 1722, quoting *Kotteakos,* 328 U.S. at 776, 66 S.Ct. at  1253. "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Id.,* citing *United States v. Lane,* 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986). At trial, petitioner did not "attack" the forensic testimony that the contents of the three bags found on the side of the

---

[19]    Her failure to challenge the sufficiency of the evidence on appeal (*see* Doc. 6, Exhibit 4, at 2 ("Purifoy does not challenge the sufficiency of the evidence on appeal.")), as well, "cuts against" her argument in this regard.

[20]    This is because Law did not waiver in testifying that Purifoy threw an object out of the driver's side window she was driving on the night in question, he observed the exact location where the thrown object came to rest on the median side of the interstate (some 200 yards back from where Purifoy's car pulled over in response to his blue lights), and minutes later he returned to the exact location he observed the object roll to a stop and recovered that object, which consisted of three individual bags containing a white powder substance he believed to be cocaine.

interstate tested positive for cocaine base, a controlled substance, weighing 71 grams; instead, she staked the position that she never possessed the cocaine that was discovered on the side of the interstate and, thus, did not throw the cocaine out of the driver's side window before being stopped by Law (*compare* Doc. 8, at 24 *with* Doc. 6, Exhibit 1, T.T. 244-45 (motion for judgment of acquittal by defendant based on the alleged failure to prove a prima facie case as to each element of the case, namely, the State's failure to show she exercised possession, dominion or control over the cocaine)). The principal question before the jury, therefore, was whether the State met its burden of proving beyond a reasonable doubt that Purifoy possessed the cocaine recovered from the median of the interstate. And the question before this Court, again, becomes whether, in light of the record as a whole, the erroneous admission of Purifoy's prior cocaine and marijuana possession conviction "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht, supra,* 507 U.S. at 637, 113 S.Ct. at 1722 (citation omitted).

The State merely offered Purifoy's prior conviction into evidence and published it to the jury at the tail end of its case-in-chief (Doc. 6, Exhibit 1, T.T. 241-42), and though the trial court charged the jury that it could consider the conviction as evidence of her motive and intent to dispose of the cocaine and her knowledge of dominion and control of the controlled substance (*see id.* at 281-82), there is nothing to suggest that the State relied heavily on this prior conviction in its closing arguments to the jury and, certainly, the State made no mention of Purifoy's prior conviction in arguing against the motion for

judgment of acquittal (*see id.* at 246-47).[21] More importantly, as in *Brecht*, "the State's evidence of guilt was, if not overwhelming, certainly weighty[,]" *id.* at 639, 113 S.Ct. at 1722, or, at the very least, as found in *Mansfield,* was "substantial and far more probative than the erroneously admitted [prior conviction,]" 679 F.3d at 1314. Trooper Law testified that when he maneuvered his vehicle behind Purifoy's vehicle to stop her for speeding her vehicle swerved/jerked toward the median and she tossed from the driver's side window an object that he saw roll to a stop in a grooved cutout of the rumble strip on the left (median) side of the interstate. It was Law's further testimony that upon Trooper Richburg's arrival at the location Purifoy's vehicle stopped, he (Law) returned to the exact location he observed the tossed object come to rest, about 200 yards back from Purifoy's vehicle, and the object he recovered contained three individual bags of a white powder substance he believed to be cocaine. In other words, it was Law's testimony that he recovered the object/item containing contraband from the exact spot he observed the object stop rolling after he witnessed the object being tossed out of the driver's side window of the car Purifoy was driving. The white substance later tested positive (in a lab setting) for cocaine base, a controlled substance, with a total weight of 71 grams.

In light of all the evidence presented at trial as a whole and accepting as correct the unrebutted factual findings of the Alabama Court of Criminal Appeals, the undersigned recommends that this Court conclude that the erroneous admission at trial of Purifoy's prior drug possession conviction did not substantially influence the jury's verdict—that is, it was harmless error under *Brecht*—and, therefore, Petitioner is not

---

[21]     The undersigned simply notes again that Purifoy did not challenge the sufficiency of the evidence on appeal.

entitled to federal habeas corpus relief. *See Mansfield, supra,* 679 F.3d at 1307 ("Because of the '[s]tates' interest in finality,' the states' 'sovereignty over criminal matters,' and the limitation of habeas relief to those 'grievously wronged,' the Supreme Court set forth in *Brecht* a standard that is more favorable to and 'less onerous' on the state, and thus less favorable to the defendant, than the *Chapman* harmless beyond a reasonable doubt standard. . . . The Supreme Court emphasized in *Brecht* that 'collateral review is different from direct review,' and, therefore, that 'an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment.'").

   **B.    Certificate of Appealability.**    Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). The instant habeas petition is being denied on the merits of the alleged underlying constitutional claim, such that a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *see also id.* at 483–484, 120 S.Ct. at 1603-1604 ("To obtain a COA

under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"); *see Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). With respect to the claim raised by petitioner herein, the undersigned recommends that the Court find that reasonable jurists could not debate whether her § 2254 habeas petition should be resolved in a different manner or that any of the remaining issues presented are adequate to deserve encouragement to proceed further. Accordingly, Petitioner is not entitled to a certificate of appealability as to any of the  claims he has raised in his habeas corpus petition.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.  *Brightwell v. Patterson,* CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. June 28, 2011) (providing for the same procedure), *report and*

*recommendation adopted,* 2011 WL 3241580 (S.D. Ala. July 29, 2011); *Griffin v. DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## CONCLUSION

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that her request for federal habeas corpus relief, pursuant to 28 U.S.C. § 2254 (Doc. 1), should be **DENIED**. Petitioner is not entitled to a certificate of appealability and, therefore, she is not entitled to appeal *in forma pauperis*.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. GenLR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which

objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 7th day of April, 2017.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**